UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN A. FINN,<br><br>  Plaintiff,<br><br>  v.<br><br>KELLEEN F. SULLIVAN, et al.,<br><br>  Defendants. | Case No. 16-cv-05285-WHO<br><br>**ORDER RE MOTIONS HEARD JANUARY 4, 2017**<br><br>Re: Dkt. Nos. 12, 28 |

## INTRODUCTION

Plaintiff Stephen Finn brings this action against several members of the Sullivan family and the Sullivan Vineyards, asserting claims based on a theory that he maintains a majority interest in the Sullivan Vineyard entities. However, during Finn and defendant Kelleen Sullivan's divorce proceedings in a Colorado court, Finn represented that all of his interests in the Winery had been transferred to Kelleen Sullivan pursuant to the Colorado court's October 2015 orders. I find that Finn's claims are barred by judicial estoppel. His complaint is DISMISSED with prejudice.

At the January 4, 2017 hearing, defendants indicated that a foreclosure is scheduled for January 17, 2017, but provided no other information. With respect to the foreclosure, Finn, and any entities in which he has a controlling interest, including Winery Rehabilitation, LLC, shall not foreclose on the Sullivan Vineyards' property. To the extent a further order is necessary, the parties should prepare one.

## BACKGROUND

**I. FACTUAL BACKGROUND**

This action follows the divorce between plaintiff Stephen Finn and Kelleen Sullivan, one of the individual defendants, in Colorado. They married on June 18, 2011. Complaint (Dkt. No.

1) ¶ 16.  Their Marital Agreement provided that, upon termination of their marriage by entry of a decree, Kelleen Sullivan would be entitled to any interest owned by Finn in the Sullivan Vineyards.  *Id.* ¶ 17.  Sullivan Vineyards was founded by Kelleen Sullivan's parents, JoAnna Sullivan and her husband.  It is comprised of Sullivan Vineyards Corporation ("SVC") and Sullivan Vineyards Partnership ("SVP") (collectively, "Sullivan Vineyards" or the "Winery").  *Id.* ¶ 15.

On August 12, 2011, Finn entered into a Stock and Partnership Purchase Agreement ("Purchase Agreement") with SVC, SVP, JoAnna Sullivan, and the Sullivan Family Revocable Living Trust. Under this agreement, Finn became the majority shareholder of SVC, with 57%, and the majority partner of SVP, with 60.8%.  *Id.* ¶¶ 19-21.  Soon thereafter, Finn negotiated with Silicon Valley Bank (the "Bank") to pay off the first and second priority secured lenders after learning that the Winery was in danger of foreclosure.  *Id.* ¶¶ 22-23.  The Bank entered into a loan with SVC and SVP, providing a real estate loan of $7,770,000, and a line of credit for $1,500,000.  *Id.* ¶ 23.  To obtain this loan, Finn entered into a written guarantee (the "Guarantee").  *Id.*

In the spring of 2015, with Finn and Kelleen's marriage deteriorating, Finn attempted to amend the Marital Agreement "to provide that he would retain his ownership interest in the Sullivan Vineyards even if the parties divorced."  Sullivan Defendants' Request for Judicial Notice ("MTD RJN") (Dkt. No. 22)[1], Ex. A (Permanent Orders, *In re Marriage of Finn*, Case No. 2015DR30434 (Colorado District Court, filed March 31, 2016) ("Permanent Orders") (Dkt. No. 22-1) at 9.  Finn threatened to "bankrupt the winery" and "run it into the ground" if Kelleen Sullivan refused to modify the agreement.  *Id.*

On May 13, 2015, Kelleen Sullivan filed a petition for dissolution of her marriage to Finn in the District Court for the City and County of Denver, Colorado.  *Id.* ¶ 28.  Finn attempted to sell the Winery "so that [Kelleen Sullivan] would be deprived of the provisions of the Marital

---

[1] All exhibits attached to the MTD RJN and to the Winery's Request for Judicial Notice ("MTS RJN") (Dkt. No. 15) are GRANTED.  *See Rosales–Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that [a court] may take judicial notice of judicial proceedings in other courts.").

2

Agreement." Permanent Orders at 10. On May 22, 2015, the Winery and its assets were listed for sale for $20,000,000. Compl. ¶ 27. However, on June 9, 2015, the Colorado court granted a temporary injunction to enjoin Finn from "transferring, encumbering or disposing of the Winery, or listing the Winery for sale." *Id.* ¶ 29. Eight days later, a Napa Valley winery owner offered $18,000,000. *Id.* ¶ 27.

Despite the injunction, Finn continued to attempt to sell the Winery. He "filed multiple lawsuits against [Kelleen Sullivan] in California in an effort to circumvent Colorado's expanded temporary injunction by seeking contrary Orders from the California courts that would allow him to proceed with the sale of all of the assets of Sullivan Vineyards." Permanent Orders at 11. For instance, Finn sought an order from a California court to allow him to sell all of Sullivan Vineyard's assets, but because he was personally prevented from selling the Winery, the lawsuit was titled "Sullivan Vineyards Corporation and Sullivan Vineyards Partners v. Kelleen Sullivan Finn." *Id.* That case "involved voluminous pleadings and multiple court appearances," and the California court refused to override the Colorado injunction. *Id.*

Finn then "staged a meeting of SVC's Board of Directors for the stated purpose of considering the sale of the business." *Id.* at 12. At that time, the three Board members were Finn, Angelica de Vere (CEO), and Ross Sullivan. *Id.* De Vere's employment contract was amended in April 2015, providing that she would receive a percentage of the net proceeds from the sale of the company. *Id.* De Vere voted in favor of the sale, Ross Sullivan voted against, and Finn abstained. *Id.* The Colorado court noted that the Board meeting minutes "reflect that it was a staged meeting to set up the filing of another lawsuit seeking to circumvent the June 9 expanded temporary injunction." *Id.* Shortly after the meeting, Finn filed a second lawsuit in California, "attempting to obtain an *ex parte* Order from the California court seeking the appointment of his chosen 'independent director' to break the 'deadlock' on the Board and force the sale." *Id.* The California court again rejected Finn's suit. *Id.* at 13.

On October 7, 2015, the Colorado court heard Finn's motion to reconsider and vacate the temporary injunction, and Kelleen Sullivan's motion for entry of a Decree of Dissolution of Marriage. *Id.* ¶ 30. The Colorado court issued an oral order (the "October 7 Order") "(1)

continuing the June 9, 2015 temporary injunction and 'enjoining any party from selling or transferring any interest in Sullivan Vineyards property or corporation,'" and "(2) entering a Decree of Dissolution of Marriage and ordering the transfer of Finn's ownership interests in SVP and SVC to Kelleen Sullivan." *Id.*

Finn alleges that the Sullivan Defendants then took a series of actions to divest him of his ownership interests in the Winery in violation of the California Corporations Code and the SVC bylaws. *Id.* ¶¶ 35-37. For instance, on October 8, 2015, "the Sullivan Defendants entered into a 'unanimous consent' by which they purported to remove Finn and Angelica J. de Vere from SVC's Board of Directors." *Id.* ¶ 38. They also "summarily terminated SVC's CEO and constructively terminated SVC's Vice President and Finance and Vice Preside of Sales and Marketing [sic]." *Id.* ¶ 42. Also on October 8, 2015, defendants' counsel sent an email to the Bank stating in part:

> Neither Mr. Steve Finn nor Ms. de Vere is no longer [sic] a Director of [sic] Officer of Sullivan Winery. Mr. Finn is no longer a partner in Sullivan Vineyards. I attach the unanimous written consent of the shareholders undertaking these actions. I will forward shortly the resolution of the Directors of the corporation.
>
> They no longer have any authority to issue any checks or bind the corporation.
>
> Please hold, and do not honor without written consent from the president Ross Sullivan, any checks purportedly authorized by Ms. de Vere.

*Id.* ¶ 39.

However, the Bank loan contained a covenant that "Borrowers [SVC and SVP] will not . . . [h]ave Finn own less than 48% of the outstanding stock of SVC[.]" *Id.* ¶ 40. The Bank declared the loan in default and demanded repayment in full from the Winery, and sought to recover the full amount from Finn pursuant to the Guarantee. *Id.* ¶¶ 40-41. On April 15, 2016, Finn paid $9,467,389.65, the full amount of the Guarantee. *Id.* ¶ 41.

In the meantime, the Colorado court issued a written order on October 16, 2015 (the "October 16 Order") confirming the October 7 Order on the temporary injunction, and written orders on October 9, 2015, (the "October 9 Order"), and October 23, 2015, (the "October 23 Order"), regarding the Decree of Dissolution of Marriage. *Id.* The October 9 Order entered the

4

Decree of Dissolution of Marriage, *nuc pro tunc* October 7, 2015, and stated, "the Court does order the immediate transfer to Petitioner of Respondents entire ownership interest in Sullivan Vineyards, including but not limited to Respondent's shares of [SVC] and his partnership interest in [SVP]." MTD RJN, Ex. B ("October 9 Order") (Dkt. No. 22-2); Permanent Orders at 3. The October 23 Order provided, "The interest that Respondent Husband owns in the Sullivan Vineyards or in any entry [sic] owning the Sullivan Vineyards, Respondent Husband's entire ownership interest, subject to all existing debt or financial obligations is transferred to, and received by, Petitioner Wife, pursuant to Section 5.7.2 of the parties' Marital Agreement." MTD RJN, Ex. C ("October 23 Order") (Dkt. No. 22-3).

Finn filed a notice of appeal from the October 7, 9, 16, and 23 Orders. Compl. ¶ 31; Permanent Orders at 14. He also filed a motion for a stay in the trial court pending the appeal. Permanent Orders at 14. The Colorado Court of Appeals dismissed the appeal, finding that "there [was] not yet a final, appealable order." Compl. ¶ 32.

Finn alleges in this action that the October Orders by the Colorado court "did not immediately transfer" his interests in the Winery. Compl. ¶ 45. Finn alleges that the defendants violated the SVC bylaws and the California Corporations Code sections 204 and 212(b)(1), which require corporations to follow their bylaws. Compl. ¶ 35. Article V, Section 3 of SVC's bylaws provides that shares in SVC can only be transferred through the following:

> [1] Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate representing shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer [2] a new certificate shall be issued to the person entitled thereto, and [3] the old certificate cancelled and [4] the transaction recorded upon the books of the Corporation.

*Id.* Finn asserts that the October 9 and October 23 Orders were not self-executing because they did not require him "to surrender his shares in SVC to SVC or its transfer agent in compliance with the foregoing bylaw provision, or take any other steps necessary to transfer his ownership interest in SVC, and in fact they affirmatively enjoined Finn from doing so."[2] *Id.* Finn also

---

[2] In support of its reply, the Winery filed declarations by Kelleen Sullivan (Dkt. No. 31) and JoAnna Sullivan (Dkt. No. 32) stating that Finn never received any share certificates. Finn filed evidentiary objections, arguing these declarations are new evidence improperly submitted in reply and that a court cannot consider evidence beyond the pleadings on a motion to dismiss under Rule

5

alleges that even if the Colorado orders provided from the immediate transfer of his ownership interests, Colorado Rule of Civil Procedure 62(a) provides that such an order cannot be enforced until 14 days after its entry. *Id.* ¶ 45. Therefore, he alleges that, despite the Colorado court orders, his interests in the Winery never transferred to Kelleen Sullivan and that he is still the majority shareholder and partner.

In January 2016, the Colorado court held several days of hearings and subsequently issued the Permanent Orders on March 31, 2016. Compl. ¶ 33; Permanent Orders. Finn filed a Motion to Stay in the Colorado court on April 19, 2016, and a Notice of Appeal on June 8, 2016. Compl. ¶ 33; MTD RJN, Exs. F-G. On December 29, 2016, the Colorado Court of Appeals denied Finn's request for a stay of enforcement of the trial court's judgment pending appeal, finding that Finn did not establish a likelihood of prevailing on the merits. Winery's Supplemental Request for Judicial Notice ("MTS Supp. RJN"), Ex. I (Dkt. No. 51) at 9.[3] In its order, the Court of Appeals noted that Finn "affirmatively stated in his supplemental brief that he [was] not seeking a stay of any of the orders related to the winery." *Id.* at 3.

## II. PROCEDURAL BACKGROUND

Finn initially brought several crossclaims against the Winery and the Sullivan Defendants in *JoAnna C. Sullivan v. Stephen A. Finn*, No. 16-cv-1948-WHO, Answer & Crossclaims (Dkt. No. 10). On August 11, 2016, I struck Finn's cross-complaint pursuant to Federal Rule of Civil Procedure 14(a)(4). *Sullivan v. Finn*, No. 16-cv-1948, Dkt. No. 55.

On September 15, 2016, Finn filed this action based on diversity jurisdiction, asserting nearly identical claims to the crossclaims I struck in *Sullivan v. Finn*, including:

(1) Declaratory judgment against the Sullivan Defendants.[4] Compl. ¶¶ 43-47. Specifically, Finn seeks a judgment stating (a) that the Colorado court's October 2015 orders did

---

12(b)(6). (Dkt. No. 37). However, these declarations are not relevant to the issues presented in these motions. Because I do not rely on them here, the evidentiary objections are OVERRULED as moot.

[3] This supplemental request for judicial notice is GRANTED.

[4] The complaint refers to defendants Kelleen Sullivan, Sean Sullivan, Caireen Sullivan, Ross

6

not cause the transfer of Finn's ownership interests in SVC and SVP, and (b) that Finn continues to own 60.8 percent of SVP and 57 percent of SVC. *Id.* ¶ 47.

(2) Declaratory judgment against the Sullivan Defendants, SVC, and SVP. *Id.* ¶¶ 48-51. Specifically, Finn seeks a judgment stating that he "acquired and continues to hold majority ownership interests in SVP and SVC free and clear of any lien, charge, encumbrance, adverse right or claim and security interest created by the Marital Agreement." *Id.* ¶ 51.

(3) Breach of fiduciary duty against Ross Sullivan and Kelleen Sullivan, on the theory that they breached the duty of loyalty they owed to Finn as a shareholder of SVC by, among other actions, purporting to remove Finn as shareholder and director of SVC without notice. *Id.* ¶¶ 52-57.

(4) Breach of fiduciary duty against Ross Sullivan and Kelleen Sullivan, on the theory that they breached the duty of care by, among other actions, purporting to remove Finn as shareholder and director of SVC without notice. *Id.* ¶¶ 58-62.

(5) Breach of fiduciary duty against the Sullivan Defendants, on the theory that they breached the duty of loyalty and the duty of care they owed to Finn, a fellow partner in SVP, by among other actions, purporting to remove Finn as a partner of SVP without notice. *Id.* ¶¶ 63-66.

(6) Intentional interference with prospective economic advantage against the Sullivan Defendants, on the theory that they have interfered with the economic relationships between Finn and SVC and SVP, including by purporting to remove him as shareholder and director of SVC and as partner of SVP. *Id.* ¶¶ 67-73.

(7) Negligent interference with prospective economic advantage against the Sullivan Defendants, on the theory that they have interfered with the economic relationships between Finn and SVC and SVP, including by purporting to remove him as a shareholder and director of SVC and as a partner of SVP. *Id.* ¶¶ 74-80.

Defendants now move to stay or dismiss this action pursuant to the *Colorado River* doctrine or, in the alternative, to dismiss all claims due to judicial estoppel. Winery's Notice of

---

Sullivan, and Philomena Maureen Sullivan Gildea collectively as the "Sullivan Defendants." I do so as well.

7

Motion to Strike (Dkt. No. 12); Sullivan Defendants' Notice of Motion to Dismiss (Dkt. No. 28). I heard oral argument on January 4, 2017. Dkt. No. 54.

**LEGAL STANDARD**

**I.  RULE 12(B)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## II.  COLORADO RIVER DOCTRINE

The *Colorado River* doctrine[5] is "a form of deference to state court jurisdiction," rather than a form of abstention.  *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1137 (9th Cir. 1990).  "Under *Colorado River*, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter."  *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted).  "[T]he *Colorado River* doctrine is a narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Id.* (internal quotation marks omitted).  It is properly applied only in "exceptional circumstances."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

The Ninth Circuit "ha[s] recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court."[6] *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011) (internal footnotes omitted).  These factors are weighed in a "pragmatic, flexible manner with a view to the realities of the case at hand" and "with the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460

---

[5] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

[6] The parties dispute whether a court must make a threshold determination that the state and federal court proceedings are "substantially similar," or if this determination simply falls into the eighth factor.  Oppo. to MTD at 11; MTD Reply at 5.  In *R.R. Street & Co.*, the Ninth Circuit noted that it had considered the eighth factor as a preliminary matter in its earlier decision in *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002), but the court went on to evaluate whether the cases were substantially similar as part of the eighth factor in its analysis, rather than as a threshold matter.  *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 979 n.9, 982 (9th Cir. 2011).  Accordingly, I will also evaluate whether this action and the Colorado proceedings are substantially similar in my analysis of the eighth factor.

U.S. at 16, 21. A court may disregard any factors that are irrelevant to the particular inquiry. *Nakash v. Marciano*, 882 F.2d 1411, 1415 n.6 (9th Cir. 1989).

## DISCUSSION

The Winery filed a motion to strike or stay this case pursuant to the *Colorado River* doctrine, or to dismiss the claims under judicial estoppel. Motion to Strike or Stay ("MTS") (Dkt. No. 13). The Sullivan Defendants also filed a motion to dismiss or stay for identical reasons. Motion to Dismiss or Stay ("MTD") (Dkt. No. 21). Finn opposes both motions by arguing that none of the *Colorado River* factors favors a stay, and that judicial estoppel does not apply. Opposition to MTS (Dkt. No. 26); Opposition to MTD (Dkt. No. 35).

Application of the *Colorado River* factors strongly favors a stay of this case. But I am persuaded that judicial estoppel bars Finn from claiming any interest in the Winery in this case. MTS at 11; MTD at 8.

Judicial estoppel is an equitable doctrine meant "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotation marks and citations omitted). Courts "invoke[] judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Although state law governs Finn's claims, "federal law governs the application of judicial estoppel in federal court." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).

In deciding whether to exercise its discretion and apply the doctrine of judicial estoppel, a court considers: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair

detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51. These factors are not inflexible or exhaustive; "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751. "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton*, 270 F.3d at 783 (9th Cir. 2001).

### A. Whether Finn Adopted "Clearly Inconsistent" Positions

Judicial estoppel is meant to "prevent a party from asserting a *claim* in a legal proceeding that is inconsistent with a previous claim." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (internal quotation marks and citation omitted; original emphasis). The claim need not be factual; the Ninth Circuit has "applied the doctrine to prevent a party from making a legal assertion that contradicted its earlier legal assertion." *Id.* (citing *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004). All that is required to satisfy the "clearly inconsistent" factor is that a party "pressed a claim in the earlier lawsuit[] that is inconsistent with the position [he or she] is taking in [this] case." *Id.*

Finn has done so here. As defendants note, Finn repeatedly stated in the Colorado proceedings that his ownership interests in the Winery had transferred to Kelleen Sullivan due to the October 2015 Orders, but here claims that his interests never transferred so that he maintains his majority ownership in the Winery.[7] MTS at 10-11; MTD at 8. In particular, defendants point to Finn's testimony during the January 2016 hearings on the remaining marital dissolution issues, including Finn's payment obligations to Kelleen Sullivan, separate and marital property and debt, attorney's fees, and spousal maintenance. Permanent Orders at 15-16. As examples, defendants cite, among others, the following excerpts:

---

[7] Finn objects to the Sullivan Defendants' Request for Judicial Notice in Support of their Reply (Dkt. Nos. 40, 41) as an improper submission of new evidence for the first time on reply. Dkt. No. 42. This objection is OVERRULED. To the extent that I rely on the documents included in this request for judicial notice, they were already provided through the Winery's request for judicial notice in support of its motion. *See* Dkt. No. 15.

11

- "Kelly was awarded the—my 60 percent interest in Sullivan Vineyards and my 58 percent interest in Sullivan Corp." (MTD RJN, Ex. E, pp. 104:11-24)
- "Q: you had just stated that at least one of the bases for your opinion that Mrs. Sullivan [Kelleen] now owns the debts that are—the obligations for the life estate annuity that are contained in the stock purchase agreement transferred with this Court's order of your interest to her back in October, correct?  A: Correct." (MTD RJN, Ex. E, pp. 109:21-25, 110: 1-3)
- "My investment in Sullivan has been diluted to zero" (MTD RJN, Ex. E, pp. 191:24-25)
- "All of the liabilities, financial responsibilities, were transferred with my partnership units and my Stock to Kelly Sullivan in October—on October 7." (MTD RJN, Ex. E, pp. 108:22-25)
- "Q: And the court also ordered your interest transferred subject to the debts and financial obligations along with it, and do you believe that included these obligations under this agreement? [Overruled objection] A: I believe it does." (MTD RJN, Ex. E, pp. 203:16-22)

Additionally, defendants point to the January 7, 2016 Joint Trial Management Certificate submitted by Finn and Kelleen Sullivan to the Colorado court. *See* MTD RJN, Ex. F.  Under the "Maintenance" section, Finn argued against a modification to the maintenance provision, stating:

> Wife has received many millions of dollars of assets as a result of the marriage; substantially more assets than she brought into the marriage, including $2 million dollars of real estate.  Under the Marital Agreement, Wife will be receiving almost 4 years of maintenance for a 4-year marriage.  In addition to the sum of $20,000 a month, her living expenses are being paid for a year and she will be provided with health insurance for her lifetime.  Wife has other income beyond maintenance of about $10,000 a month and *has the ability to earn a substantial income running Sullivan Vineyard Corporation*.

*Id.* at 6 (emphasis added).  Defendants note that Kelleen Sullivan could not "run" SVC if Finn's interests had not transferred to her.  MTD Reply at 2.

Defendants also cite Finn's February 8, 2016 Proposed Findings of Fact and Conclusions of Law, which states:

> In addition to the maintenance payments, the Petitioner is leaving the marriage with many times over the assets she brought into the marriage including about $2 million in real estate, million dollars or more in jewelry and furs and *the majority interest in the winery*.

12

MTS RJN, Ex. H at 10 (emphasis added).

Finn's argument that his position in the divorce proceedings is not "clearly inconsistent" with his position here is unconvincing. *See* Oppo. to MTD at 19. He relies on the declaration by his Colorado counsel characterizing Finn's January 2016 testimony as concerning "the effect the October 2015 order transferring the Sullivan Vineyard interests from Finn to Kelleen Sullivan would have on his obligations to JoAnna Sullivan under the Stock Purchase Agreement *if* the October 2015 orders were final and affirmed." Declaration of Diane Carlton (Dkt. No. 26-1) ¶ 17 (original emphasis).[8] Additionally, Finn states that he was never asked about his claims in this case or whether he had transferred his shares pursuant to the SVC bylaws. Oppo. to MTS at 20. Because Finn never stated that he transferred his shares pursuant to the bylaws, he argues his statements are not inconsistent.

Finn's arguments ignore his central theory that his ownership interests were not transferred. Either his ownership interests have already been transferred, as Finn represented in the Colorado proceedings, or they have not, as he represents in this action. These positions are clearly inconsistent. The first *New Hampshire* factor favors dismissal.

### B. Whether Finn Benefited from the Earlier Position

"The second *New Hampshire* factor—that one of the courts has been misled—is often dispositive." *Baughman*, 685 F.3d at 1133. "For a court to be misled, it need not itself adopt the statement; those who induce their opponents to surrender have prevailed as surely as persons who

---

[8] Finn filed the Carlton Declaration with his opposition to the Winery's motion (Dkt. No. 26) and a Request for Judicial Notice of the Carlton Declaration with his opposition to the Sullivan Defendants' motion (Dkt. No. 36). Sullivan Defendants have moved to strike this request and filed evidentiary objections in the alternative. Dkt. No. 39. The Winery also filed evidentiary objections. Dkt. No. 34. The motion to strike the request for judicial notice is DENIED as moot because I can already consider the Carlton Declaration through its original submission with Finn's opposition to the Winery's motion. Dkt. No. 26-1. As for the evidentiary objections, this decision only cites to paragraph 17 of the Carlton Declaration. The objections to the other paragraphs are overruled as moot. In regards to paragraph 17, defendants assert that this statement lacks foundation; its probative value is outweighed by risk of prejudice; and hearsay. The first two objections are overruled. In regards to hearsay, I place limited reliance on contents of this declaration and cite it only to reflect Finn's argument. To the extent that this decision relies on the Carlton Declaration, it does so only in conformance with what the judicially noticed documents say.

induce the judge to grant summary judgment." *Id.* at 1133-34 (internal quotation marks omitted). What matters is whether Finn "derived a benefit from an earlier lawsuit where material inconsistent representations were made," either by Finn or on his behalf. *Id.* at 1134.

Finn argues that he did not succeed in persuading the Colorado court of anything, but rather the court had already ordered the transfer of his interests in the Winery. He asserts that he had to litigate the remainder of the divorce case as if the order was valid, stating "litigating in the trial court based upon the effect of the trial court's prior orders does not estop a party from appealing those orders and contesting their legal validity on appeal." Oppo. to MTD at 20.

For this proposition, Finn cites to *Zedner v. United States*, 547 U.S. 489 (2006), where the Supreme Court evaluated, among other issues, (1) the validity of a "blanket, prospective waiver" of a criminal defendant's rights under the Speedy Trial Act of 1974, and (2) whether the petitioner was judicially estopped from challenging the validity of the waiver. *Id.* at 492-93. The petitioner was indicted in April 1996, and the district court granted "ends-of-justice" continuances through November of that year. *Id.* at 493. Petitioner then requested a further continuance to January 1997 and the district court asked petitioner to "waive for all time" his rights under the Speedy Trial Act. *Id.* at 493-94. Petitioner signed the waiver, promising not to move for dismissal for failure to comply with the Speedy Trial Act. *Id.* at 494. Trial did not begin until April 2003. *Id.* at 496.

After holding that a criminal defendant may not prospectively waive the application of the Speedy Trial Act, the Court assessed the government's argument that the petitioner was judicially estopped from asserting that the waiver was invalid for lack of an "ends-of-justice" finding because the waiver induced the district court to grant a continuance without such a finding. *Id.* at 503. The Court rejected this argument, holding that the petitioner's implied position that waivers were enforceable did not give rise to judicial estoppel. It explained:

> [P]etitioner's (mistaken) agreement that Speedy Trial Act waivers are valid also does not provide a ground for estoppel. Petitioner did not "succeed in persuading" the District Court to accept the proposition that prospective waivers of Speedy Trial Act rights are valid. On the contrary, it was the District Court that requested the waiver and produced the form for petitioner to sign. And while the other relevant factors (clear inconsistency and unfair advantage or detriment) might in isolation support the Government, we think they

14

> do not predominate where, as here, the Government itself accepted the District Court's interpretation without objection.

*Id.* at 505.

*Zedner* is a very different case from this one; a prospective waiver of the Speedy Trial Act has no relationship to Finn's representations.  His statements that he did not persuade the Colorado court regarding his obligations under the Purchase Agreement or the Marital Agreement maintenance provision miss the mark.  To be sure, the Colorado court would have expected Finn to appeal the orders transferring his interests in the Winery, as well as any impact those orders had on the resulting division of assets and maintenance awards.  Indeed, Finn attempted to appeal the October 2015 orders before they were final and appealable.  But the Colorado court would have taken into account the impact of the transfer of the Sullivan Vineyards when making the maintenance award and would likely be surprised that Finn is challenging the legal niceties of the transfer.  Finn represented to the Colorado court that his interests had transferred.  He gave no indication that he believed the Colorado court needed to order him to take affirmative steps to transfer his shares in accordance with the SVC bylaws, rather than simply ordering the immediate transfer of his ownership interests in the Winery.  By stating that his interests had been transferred in October 2015, Finn misled the Colorado court into believing that it had nothing left to do in effectuating a transfer.  His representations caused Kelleen Sullivan to forego any requests to the Colorado court that it do something more to effectuate its October 2015 orders.  Based on Finn's statements, there seemingly was no need.

Because Finn's statements misled the Colorado court, this factor favors dismissal.

### C. Whether Finn Obtains an Unfair Advantage or Imposes an Unfair Detriment

As defendants note, Kelleen Sullivan would be harmed if Finn is not estopped because "[s]he has gone through the time, expense and burden of a full trial on Finn's premise that his ownership interests were transferred." MTD at 10.  The control of the Winery was an issue decided early on in the Colorado divorce proceedings, presumably because of Finn's attempts to sell the Winery.  This action is an apparent attempt by Finn to get around the Colorado court's unfavorable order transferring his ownership interests in the Winery.

By misleading the Colorado court into believing it need not do anything else to effectuate the transfer, Finn would obtain an unfair advantage in this case. If Finn had not represented that the transfer occurred, then Kelleen Sullivan could have moved the Colorado court for an additional order leaving no question that the majority ownership interests in the Winery transferred to her. But because that did not happen, Finn now argues he was never ordered to affirmatively transfer his shares in accordance with the SVC bylaws and is entitled to a finding that he is still the majority owner of the Winery.

Nor is Finn harmed by this ruling. He has been able to prosecute his appeal in the Colorado courts, which have jurisdiction over his divorce and property settlement.

### D. Balancing of Factors

In short, Finn is "playing fast and loose with the courts," hopping from court to court to find a favorable forum. *Hamilton*, 270 F.3d at 782. Each of the *New Hampshire* factors supports a finding that Finn is estopped from claiming that his interests in the Winery did not transfer to Kelleen Sullivan. Because all of Finn's claims are based on a theory that he is still the majority shareholder of SVC and majority partner of SVP, it is appropriate to dismiss the complaint in its entirety. This decision will protect the integrity and dignity of the Colorado proceedings.

## CONCLUSION

Finn's claims are barred by judicial estoppel. Because leave to amend would be futile, his complaint is DISMISSED with prejudice.

**IT IS SO ORDERED**.

Dated: January 13, 2017

WILLIAM H. ORRICK
United States District Judge